# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| MARCUS UNDERWOOD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No.: 2:15-cv-01585-JHE |
| THE CITY OF BESSEMER, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION[1]

On September 28, 2018, the undersigned granted Defendants'[2] motion for summary judgment, (doc. 43), and dismissed this 42 U.S.C. § 1983 action with prejudice. (Docs. 66 & 67). Plaintiff Marcus Underwood ("Underwood" or "Plaintiff") has moved to alter or amend that judgment pursuant to Fed. R. Civ. P. 59(e). (Doc. 68). Defendants oppose that motion. (Doc. 70). Underwood has also moved for leave to file supplemental authority in support of his Rule 59 motion, (doc. 71), and Defendants have submitted a response to that motion, (doc. 72). Underwood's motion for leave is **GRANTED** to the extent that the undersigned will consider the arguments made in the motion and the attached authority, but, for the reasons stated more fully

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 10).

[2] Defendants in this action are the City of Bessemer ("Bessemer"); Bessemer Chief of Police Nathaniel Rutledge ("Chief Rutledge"), in both his individual and official capacity; Bessemer Police Department Officer Daniel Cecil Partridge ("Officer Partridge"), in both his individual and official capacity; and Bessemer Police Officer Christopher Asarisi ("Officer Asarisi"), in both his individual and official capacity.

below, Underwood's Rule 59(e) motion is **DENIED**. However, a new memorandum opinion will be substituted for the previous opinion

## I. Legal Standard

Rule 59(e) permits a party to move to alter or amend a judgment. FED. R. CIV. P. 59(e). "Reconsidering the merits of a judgment, absent a manifest error of law or fact, is not the purpose of Rule 59." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010). To that end, "the only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (quoting *In re Kellogg,* 197 F.3d 1116, 1119 (11th Cir.1999)) (internal alterations omitted). For the purposes of the Rule, a manifest error of law is "the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Benton v. Burke*, No. CV-11-S-493-NE, 2012 WL 1746122, at *1 (N.D. Ala. May 16, 2012) (quoting *Oto v. Metropolitan Life Insurance Co.,* 224 F.3d 601, 606 (7th Cir. 2000)). "A Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Id.* (quoting *Michael Linet, Inc. v. Village of Wellington, Fla.,* 408 F.3d 757, 763 (11th Cir.2005)) (internal alterations omitted).

## II. Analysis

Underwood's Rule 59(e) motion challenges the undersigned's conclusion that Officer Partridge and Officer Asarisi are entitled to qualified immunity. (*See* doc. 68).

Although this is not actually the error Underwood states entitles him to relief under Rule 59(e), the undersigned starts with Underwood's contention the court failed to construe the evidence favorably to him and, instead, resolved factual disputes in Defendants' favor. (Doc. 69 at 2-3).

2

For the most part, the undersigned does not need to delve into this issue because the memorandum opinion accounts for the reasons why Underwood's assertions are misplaced. The only specific piece of evidence Underwood identifies that the memorandum opinion did *not* account for was an excerpt from the deposition of Elizabeth "Lee" Harrington ("Harrington"). The undersigned noted in the memorandum opinion: "Underwood states Harrington testified Underwood's car did not accelerate until after the officers began shooting at it. (Doc. 58 at 13, ¶ 13-14). None of the testimony Underwood references supports this assertion." (Doc. 66 at 12 n.12). The memorandum opinion then identifies the portions of Harrington's testimony that Underwood cited. (*See id.*) (citing doc. 58 at 13, ¶¶ 13-14 (which, in turn, cites doc. 37-3 at 60:1-23, 62:14-23)). Underwood's instant motion cites a different portion of Harrington's testimony to rebut the memorandum opinion's alleged conclusion that "none of Harrington's testimony supports an assertion that Underwood's car did not accelerate until after the officers began shooting at it." (Doc. 68 at 3-4, n.2). In that portion, the following exchange occurred:

> Q. And that's because you first observed the car when you stepped outside?
>
> A. When I was outside, I observed the car going around the policeman. I don't know where it came from. I didn't see anything.
>
> Q. And it was going by the tall, thin police officer?
>
> A. Correct.
>
> Q. And do you know where the other officer was at that time?
>
> A. No.
>
> Q. Did you observe the car begin to move more quickly as it went past the tall, thin officer, before the shots were fired?
>
> A. No.

3

> Q. So it was moving at the same speed that entire time?
>
> MR. ALLEN: Object to the form.
>
> A. Yes.
>
> Q. From the first time you observed it?
>
> A. Yes.

(Doc. 37-3 at 17 (65:11-66:8).

Preliminarily, Underwood mischaracterizes the memorandum opinion. It did not conclude that "none of Harrington's testimony" provided a basis to conclude that Underwood's car did not accelerate—it referenced the testimony Underwood cited. And this is accurate up to a point, because the cited portion of the deposition appears nowhere in Underwood's opposition to Defendants' motion for summary judgment. However (although Underwood does not point to this in his Rule 59(e) motion), it appears Underwood did reference that portion of Harrington's testimony in his reply in support of his own motion for summary judgment. (*See* doc. 65-1 at 8). Since Underwood incorporated his briefing and evidence into his response to Defendants' motion for summary judgment, (doc. 58 at 1), and since the undersigned stated all of Underwood's briefing and evidence would be considered in the context of Defendants' motion, (doc. 66 at 17), the memorandum opinion should have taken it as a disputed fact that Underwood's Nissan accelerated prior to Officer Partridge's gunshots towards it.

That said, the ultimate conclusion of the memorandum opinion remains for two reasons. First, although the undersigned stated "the character of the encounter changed when Underwood accelerated towards Officer Partridge," (doc. 66 at 25), this statement reflects a convenient line of demarcation based on what appeared to be the undisputed facts more than a conclusion that the

4

character of the encounter would not have changed absent the acceleration. What is left without the acceleration is (1) the Nissan continuing to approach Officer Partridge at a slow rate of speed as it passed Officer Asarisi; (2) Officer Partridge fired at the Nissan as it was around eight feet away from him and still moving slowly towards him; (3) everyone, including Underwood, concedes the Nissan represented a threat of death or serious injury to Officer Partridge. Consequently, it would be more accurate to amend the paragraph describing the "character of the encounter" as follows:

> Taking all reasonable inferences favorably to Underwood, clear Eleventh Circuit precedent compels the conclusion the undisputed facts establish a reasonable police officer would have perceived Underwood's Nissan as a dangerous threat capable of inflicting serious injury on Officer Partridge. At the time Officer Partridge fired on Underwood, the officers had arrived at a location where a domestic incident, including shots fired, had been reported. At the scene, they encountered two men apparently arguing, and, when the officers attempted to investigate, Underwood got into his car and did not comply with the officers' instructions to stop the vehicle. None of this would support the use of deadly force, regardless of whether the officers had reasonable suspicion sufficient to detain Underwood. But the character of the encounter changed ~~when Underwood accelerated~~ **as Underwood's Nissan continued to move** towards Officer Partridge. It was only at that point, **with the Nissan approximately eight feet away**, that Officer Partridge began to fire at the approaching vehicle, and Officer Asarisi followed suit once he saw the Nissan hit Officer Partridge. Underwood explicitly does not dispute the Nissan was a deadly weapon that posed the threat of serious injury. (Doc. 58 at 8, ¶ 25). As in *Terrell* [*v. Smith*, 668 F.3d 1244 (11th Cir. 2012)], and regardless of the fact that Officer Partridge was ultimately uninjured, the vehicle's contact with Officer Partridge created an even greater risk of bodily harm than it would had it simply passed him. And, as in *Robinson* [*v. Arrugueta*, 415 F.3d 1252 (11th Cir. 2005)], the Nissan's slow rate of speed did not dispel that it could be a dangerous weapon when pointed at Officer Partridge. Under the totality of the circumstances, the officers had probable cause to believe Underwood's operation of the Nissan posed a dire threat to Officer Partridge when each began to fire.

(Doc. 66 at 24-25) (strikethrough and bold indicating alterations). The remainder of the memorandum opinion contains several other references to acceleration, but these are not material

5

to the conclusion reached. Those references, as well as the characterization of the Nissan's acceleration as an undisputed fact, will be corrected in the substituted opinion.

As Underwood puts it, "[i]t is undisputed that one policeman was in front of Underwood's car and one behind it, that the car moved toward the policeman in front of the car, that both policemen shot at the car, and that Underwood suffered multiple gunshot wounds as a result. It is fiercely disputed, however, whether the car was moving fast or slow and when exactly in the encounter the policemen began shooting; i.e., did they begin shooting before or after Underwood accelerated his vehicle?" (Doc. 68 at 3). But none of these factual disputes hold water in light of clear Eleventh Circuit precedent. Specifically, the Eleventh Circuit's opinion in *Robinson*, referenced in the block quoted portion of the memorandum opinion above, looms just as large even without accepting as fact that Underwood's Nissan accelerated. In that case, the decedent's vehicle was slowly moving towards the officer at a rate of one to two miles per hour from a distance of about two to four feet away. *Id.*, 415 F.3d at 1254. Emphasizing that the officer had mere seconds to react to the situation and that "it is . . . constitutionally reasonable for an officer to use deadly force when he has probable cause to believe that his own life is in peril," the court found the officer reasonably believed the vehicle was being used as a deadly weapon. *Id.* at 1256. Consequently, it held the officer had not violated the decedent's Fourth Amendment rights. *Id*. Whether or not Underwood's Nissan "was moving fast or slow," *Robinson* compels the conclusion that Officer Partridge did not violate Underwood's Fourth Amendment rights by shooting at his slowly-approaching Nissan. As noted in the memorandum opinion, "Underwood explicitly does not dispute the Nissan was a deadly weapon that posed the threat of serious injury." (Doc. 66 at 25)

6

(citing doc. 58 at 8, ¶ 25). Given that undisputed fact, Eleventh Circuit precedent requires qualified immunity in these circumstances.

Second, and more importantly, Underwood has provided no basis to conclude the right at issue was clearly established. The memorandum opinion identifies this flaw as "independently fatal to Underwood's claim," (doc. 66 at 28), and it remains so. Underwood's belated effort to show the violation of a clearly established right is his supplemental authority, the Eleventh Circuit's recent decision in *Sebastian v. Ortiz*, 918 F.3d 1301 (11th Cir. 2019). That case stands for the unremarkable proposition that a plaintiff can show a constitutional right is clearly established in several ways.[3] But Underwood did not take advantage of *any* of those methods of demonstrating that the constitutional right at issue was clearly established. Instead, he argued qualified immunity was not appropriate because there were factual disputes, and thus the case had to be tried to a jury. (Doc. 58 at 30-31). Having failed to meet his burden to show a clearly established right at summary judgment, Underwood cannot now claim that the undersigned erred by granting qualified immunity.

Furthermore, the undersigned rejected Underwood's contention that qualified immunity should be denied when an officer allegedly creates danger to himself through his own actions.[4]

---

[3] To the extent Underwood relies on *Sebastian* as clearly established law supporting the denial of qualified immunity, not only had it not been decided at the time of the events giving rise to this case, but the case is factually dissimilar. In *Sebastian*, crucially, there was no threat to the officers. 918 F.3d at 1309-10. Here, by contrast, Underwood conceded that his vehicle was a threat.

[4] The memorandum opinion did not conclude that the officers were justified in firing into his vehicle to effectuate a *Terry* stop, as Underwood argues in his supplement, (*see* doc. 71 at 3).

(*See* doc. 66 at 29). Underwood's Rule 59 motion characterizes this as an error of law, taking issue with the application of *Knight through Kerr v. Miami-Dade County*, 856 F.3d 795 (11th Cir. 2017), which the undersigned relied on for that proposition. (Doc. 68 at 4-5). But Underwood misses the point when he attempts to distinguish this case from *Knight*. As stated in the memorandum opinion, *Knight* rejected that the Sixth and Seventh Circuit cases applying the broad standard Underwood advances are the law of this circuit. (*See* doc. 66 at 29). No amount of factual distinctions between this case and *Knight* undermine that conclusion; the Eleventh Circuit clearly and unambiguously rejected that the statement "'the Defendants are not justified in using deadly force if their own objectively unreasonable actions created the very risk that generated the eventual use of deadly force' . . . is a correct statement of the law" in this Circuit.[5] 856 F.3d at 814-15. While the court went on to discuss some of the issues Underwood highlights—i.e, whether or not the officers' actions in that case were unreasonable, *see id.* at 815-16—none of those relate to the portions of *Knight* the undersigned relied upon. Accordingly, Underwood has pointed to no manifest error of law in the memorandum opinion.

### III. Conclusion

For the reasons stated above, Underwood's Rule 59 motion, (doc. 68), is **DENIED**. However, the previous memorandum opinion, (doc. 66), is **WITHDRAWN**, and a memorandum opinion consistent with the reasoning above will be substituted.

---

[5] Because *Knight* was a Florida case, the Eleventh Circuit did not discuss whether a decision of the Alabama Supreme Court might support this proposition. However, Underwood points to no such decision, and the undersigned has found none.

DONE this 12th day of September, 2019.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE